OPINION
{¶ 1} Plaintiff-appellant, the State of Ohio ("appellant"), appeals the judgment of the Franklin County Court of Common Pleas, which granted motions to suppress filed by defendant-appellee, Samuel D. Stokes ("appellee").
 {¶ 2} Franklin County Sheriff Deputy Douglas Stahr stopped appellee for driving too close to a semi-tractor trailer in violation of R.C. 4511.34. Deputy Robert McKee *Page 2 
arrived to assist, and the deputies found cocaine in appellee's possession. The deputies arrested appellee for cocaine possession and cited him for the traffic violation.
 {¶ 3} Thereafter, appellee filed motions to suppress (1) the cocaine discovered during the traffic stop, and (2) statements that appellee made to law enforcement during and after the traffic stop. The trial court granted appellee's motions and suppressed the evidence.
 {¶ 4} Appellant appeals, raising one assignment of error:
 THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT'S MOTION TO SUPPRESS.
 {¶ 5} Initially, we address appellee's motion to dismiss appellant's appeal. Appellee argues that we lack jurisdiction to entertain this appeal because appellant failed to include the requisite Crim. R. 12(K) certification with the original notice of appeal. However, appellant moved to amend the notice of appeal to include the Crim. R. 12(K) certification, and we previously granted the motion. Therefore, we conclude that we have jurisdiction to entertain this appeal, and we deny appellee's motion to dismiss.
 {¶ 6} In its single assignment of error, appellant contends that the trial court erred by granting appellee's motions to suppress. We agree.
 {¶ 7} When presented with a motion to suppress, the trial court assumes the role of trier of fact. State v. Mills (1992),62 Ohio St.3d 357, 366. As such, the trial court is in the best position to resolve questions of fact and evaluate witness credibility. State v. Mayl,106 Ohio St.3d 207, 2005-Ohio-4629, ¶ 41, citing State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. On review, we must accept the trial court's factual findings if they are supported by competent, credible evidence. Accepting those facts *Page 3 
as true, we must then independently determine whether, as a matter of law and without deference to the trial court's conclusion, whether those facts meet the applicable legal standard. Id.; State v. Klein (1991), 73 Ohio App.3d 486, 488.
 {¶ 8} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable seizures of persons or property. State v. Mays, Slip Opinion No. 2008-Ohio-4539, ¶ 7. A law enforcement officer's temporary detention of an individual during a traffic stop, even if only for a brief period and for a limited purpose, constitutes a seizure of a person within the meaning of the Fourth Amendment. Therefore, in order to meet constitutional limitations, the detention must be reasonable under the circumstances. Whren v. United States (1996), 517 U.S. 806, 809-810.
 {¶ 9} The Supreme Court of Ohio has observed that "`[authorities seem to be split as to whether a traffic stop is reasonable when supported merely by reasonable suspicion, or whether the heightened standard of probable cause must underlie the stop.'" City of Bowling Green v.Godwin, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 13, quoting Gaddis ex rel.Gaddis v. Redford Twp. (E.D.Mich. 2002), 188 F.Supp.2d 762, 767. More recently, however, the Supreme Court of Ohio has stated that "if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." Mays at ¶ 8.
 {¶ 10} To meet the reasonable suspicion standard, an officer must demonstrate "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio (1968), 392 U.S. 1, 21. "The *Page 4 
`reasonable and articulable suspicion' analysis is based on thecollection of factors, not on the individual factors themselves." (Emphasis sic.) State v. Batchili, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 19. Thus, "a police officer who lacks probable cause but whose observations lead him reasonably to suspect that a particular person's behavior is criminal may detain the person briefly to investigate the circumstances that provoked the suspicion." Mays at ¶ 13, citingBerkemer v. McCarty (1984), 468 U.S. 420, 439.
 {¶ 11} "Probable cause is a stricter standard than reasonable and articulable suspicion." Mays at ¶ 23, citing State v. Evans (1993),67 Ohio St.3d 405, 411. The Supreme Court of Ohio has stated that "[p]robable cause is certainly a complete justification for a traffic stop," but the court has "not held that probable cause is required."Mays at ¶ 23. Thus, we begin with the question whether there existed a reasonable and articulable suspicion to justify the stop at issue here.
 {¶ 12} Deputy Stahr stopped appellee for violating R.C. 4511.34, which prohibits a driver from following another vehicle "more closely than is reasonable and prudent, having due regard for the speed of such vehicle * * * and the traffic * * * and the condition of the highway." Stahr testified that he observed appellee traveling eastbound on I-70 at approximately 4 p.m. on April 20, 2006. He described the road conditions at that time as "dry" and traffic as "moderate to heavy." (Oct. 5, 2007 Tr. 7.) Stahr was traveling in a lane to the left of appellee's vehicle, about four to five car lengths back.
 {¶ 13} As for the distance between appellee and the tractor trailer in front of him, Stahr testified that "[i]t was less than a car length." (Oct. 5, 2007 Tr. 8.) He described it as "[approximately 15 to 20 feet." (Oct. 5, 2007 Tr. 8.) He also stated that both he and appellee were traveling about 55 to 60 m.p.h. *Page 5 
 {¶ 14} Stahr observed appellee for about a quarter of a mile, and from that observation, determined that appellee was traveling "way too close to another vehicle." (Oct. 5, 2007 Tr. 10.) He stated: "There is a standard ratio of a car that I had that shows estimated speeds, how far you should be back from other vehicles and allowing him to brake, how far he should be back, the braking time, and the braking distances it takes." (Oct. 5, 2007 Tr. 10.) State's Exhibit 1 is an enlarged copy of the "MINIMUM FOLLOWING DISTANCES" guideline Stahr uses to determine appropriate distances between certain vehicles at different rates of speed. The guideline for a car traveling at 55 m.p.h. behind any vehicle is 121 feet.
 {¶ 15} Stahr testified that law enforcement also uses "another broad rule of thumb * * * For every ten miles per hour the vehicle is traveling, you should allow one car length for every ten." (Oct. 5, 2007 Tr. 12.)
 {¶ 16} After observing appellee for about a quarter of a mile, Stahr pulled in behind him and made the stop. He ultimately issued appellee citations for having a cracked windshield, failing to have a front license plate, and driving too close to another vehicle. Stahr did not conduct a criminal background check on appellee. Because Stahr was working as part of a drug interdiction team, a canine unit arrived on the scene and, ultimately, discovered illegal drugs.
 {¶ 17} On cross-examination, Stahr testified that there had been no crash as a result of appellee following too closely behind the vehicle in front of him. He also confirmed that he had never examined the basis for the statistical formula used to determine the minimum distance guidelines he used. Finally, Stahr did not deny that, if he observed appellee for about a quarter of a mile while traveling at a speed of about 60 *Page 6 
m.p.h., then he observed appellee for about 14 seconds. He admitted that, during that time, he did not observe whether appellee moved behind the tractor trailer in order to exit from the highway.
 {¶ 18} On re-direct examination, Stahr confirmed that "a serious accident" could have resulted if the tractor trailer had stopped suddenly. (Oct. 5, 2007 Tr. 38.) He stated that he had responded to "[o]ver 100" accidents of that nature. (Oct. 5, 2007 Tr. 39.) He also stated that following another vehicle too closely is one indicator of drunk driving.
 {¶ 19} In closing arguments, defense counsel did not suggest that Stahr was lying. Rather, the defense's position was that Stahr "was not in a physical position to make the judgment that he made because of the angle of his car, the position, and the rate of travel, and the time he had to observe it." (Oct. 5, 2007 Tr. 105-106.) Specifically, counsel questioned Stahr's ability to determine accurately that appellee was within 20 feet behind the vehicle in front of him when Stahr only observed appellee for about 15 seconds.
 {¶ 20} The trial court appears to have accepted Deputy Stahr's testimony that appellee was traveling 15 to 20 feet behind the vehicle in front of him because the court made no ruling that Stahr was not in a position to make that determination or that appellee was not within a car length of the vehicle in front of him. Nevertheless, the court rejected Stahr's basis for the stop. The court stated:
 I certainly don't question the motivation of the police officer or the deputy sheriff. But taking all things into consideration, it is the view of the court that this was a sort of a hyper-extension of enforcement. *Page 7 
 I think all of us have been in situations where you are in the righthand lane, and we are thinking about leaving to get on a ramp or following behind a truck at a speed that was not in excess. In fact, it was under the posted speed limit. It is possible to get closer to a vehicle than 20 feet and not be operating in an unsafe fashion.
 For that reason it is the determination of the court that the basis for the stop was not well-founded and was inadequate. * * *
(Nov. 14, 2007 Tr. 6.)
 {¶ 21} While we may agree with the trial court's conclusion that it may be possible to drive safely while maintaining a speed of 55 to 60 m.p.h. and a distance of 15 to 20 feet behind another vehicle, that does not resolve the question whether the stop met the reasonable suspicion standard. The focus of that question — whether the facts supported a reasonable suspicion — is on what Stahr believed at the time of the violation, not on whether appellee actually violated the statute or to what degree.
 {¶ 22} Faced with an argument similar to the trial court's reasoning, the Supreme Court in Mays stated that the question of whether appellant might have a defense to a charge of committing a traffic violation "is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." Mays at ¶ 17.
 {¶ 23} Stahr testified that he relied on written guidelines for determining minimum following distances and on the one-car-length-per-ten-miles-per-hour rule of thumb. He stated that appellee was traveling less than a car length behind the tractor trailer in front of him and that, in more than 15 years as a police officer, he had responded to more than 100 accidents resulting from vehicles traveling too closely. *Page 8 
 {¶ 24} Courts throughout Ohio have relied on the one-car-length rule to conclude that probable cause existed to support a stop for violating R.C. 4511.34. See, e.g., State v. Meza, Lucas App. No. L-03-1223,2005-Ohio-1221 (officer's use of the one-car-length rule and his estimate that defendant was traveling one and a half car lengths behind a semi gave the officer probable cause to believe that a violation had occurred and to make the stop); State v. Bell, Preble App. No. CA2001-06-009, 2002-Ohio-561 (holding that probable cause existed where officer testified that one-car-length rule was "the customary standard used to determine a reasonable and prudent distance between vehicles" and that defendant was traveling two and a half to three car lengths behind another vehicle at 65 m.p.h.); State v. Keller (Jan. 14, 2000), Montgomery App. No. 17896 (concluding that, once officer observed individual "driving his rented car as close as one car length behind the tractor trailer, he had probable cause to stop him for violating R.C. § 4511.34"). See, also, United States v. Roberts (S.D.Ohio 2005),492 F.Supp.2d 771, 774 (concluding that officer had probable cause to believe that individual violated R.C. 4511.34 by driving within one car length behind tractor trailer and that "Ohio courts have concluded that probable cause to believe that a driver has violated § 4511.34 exists under similar circumstances"). Other courts have drawn similar conclusions using a reasonable suspicion standard. See, e.g., State v.Johnson, Medina App. No. 03CA0127-M, 2004-Ohio-3409 (concluding that reasonable suspicion existed where officer testified that defendant was traveling within one car length of a semi at a speed of 60 to 65 m.p.h.).
 {¶ 25} Based on the evidence before us, we similarly conclude that Deputy Stahr had, at the very least, a reasonable suspicion that appellee had committed a violation of *Page 9 
R.C. 4511.34. To reach that conclusion, we rely upon Stahr's testimony concerning the customary and written guidelines for determining minimum following distances and his testimony that he had observed appellee traveling at a distance of less than one car length behind a semi-tractor trailer.
 {¶ 26} In support of a contrary conclusion, appellees offer the case of State v. Loza-Gonzalez, Lucas App. No. L-05-1046, 2005-Ohio-5735, in which the Sixth District Court of Appeals affirmed the trial court's suppression of evidence arising from a traffic stop. InLoza-Gonzalez, a state trooper testified that he stopped defendant for traveling within one and a half car lengths of a semi-tractor trailer, in violation of R.C. 4511.34. The trial court relied on a videotape recording of the pursuit and stop, however, and found that the recording did not support the trooper's testimony. Instead, the trial court found, the evidence showed that the defendant was traveling at a much greater distance from the other vehicle and failed to establish a violation of R.C. 4511.34. On appeal, the Sixth District affirmed, holding that competent, credible evidence supported the trial court's findings. Specifically, the appellate court concluded: "As the evidence shows that appellee did not operate his vehicle more closely to the semitractor trailer than was reasonable and prudent, we conclude that [the trooper] lacked a reasonable and articulable suspicion to stop appellee's vehicle." Id. at ¶ 16.
 {¶ 27} Here, the trial court had no such evidence before it. The court had only the testimony of Deputy Stahr and appears to have accepted Stahr's testimony that appellee was traveling between 15 to 20 feet behind the tractor trailer in front of him. The trial court made no finding that rejected Stahr's estimate of the distance or that Stahr was not in a position to make that estimate. *Page 10 
 {¶ 28} The trial court did not indicate whether it was applying a standard of probable cause or reasonable suspicion, and the court made no express finding concerning either. While the court criticized the officers for "hyper-extension" of the statute, we need not concern ourselves with the degree of violation or whether, as the trial court commented, the statute "is honored far more in the breach than in the keeping." (Oct. 5, 2007 Tr. 95.) Writing for a unanimous court inWhren, Justice Scalia stated: "[W]e are aware of no principle that would allow us to decide at what point a code of law becomes so expansive and so commonly violated that infraction itself can no longer be the ordinary measure of the lawfulness of enforcement." Whren at 818. Ohio courts have adhered to similar principles. See, e.g., City of Dayton v.Erickson (1996), 76 Ohio St.3d 3, 11-12 (holding "that where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor trafficviolation, the stop is constitutionally valid") (emphasis added);State v. Gross, Mahoning App. No. 01-CA-115, 2002-Ohio-3465 (rejecting the argument that a de minimis violation does not support probable cause); State v. Mehta (Sept. 4, 2001), Butler App. No. CA2000-11-232 (rejecting as "meritless" argument that a de minimis violation does not support probable cause); State v. McCormick (Feb. 5, 2001), Stark App. No. 2000CA00204 ("[t]he severity of the violation is not the determining factor as to whether probable cause existed for the stop").
 {¶ 29} Finally, we reject appellee's suggestion that the stop was unreasonable because Stahr was working as part of a drug interdiction team. In Whren, the United States Supreme Court held that a pretextual traffic stop was not unconstitutional where the officer had an objectively reasonable basis for making the stop. And, inErickson, *Page 11 
the Supreme Court of Ohio held that a police officer's stop of a vehicle based on probable cause that a traffic violation has occurred or was occurring does not violate constitutional restrictions "even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Id. at syllabus.
 {¶ 30} For all these reasons, we conclude that appellant met its burden to show that Stahr's initial stop of appellee was not unreasonable and that the trial court erred in concluding otherwise. We have not considered, however, whether the trial court could have granted appellee's motions on other grounds, and we remand this matter to the trial court for further proceedings on appellee's motions to suppress.
 {¶ 31} In conclusion, we sustain appellant's assignment of error. We reverse the judgment of the Franklin County Court of Common Pleas, and we remand this matter for further proceedings consistent with the foregoing opinion and applicable law.
Motion to dismiss denied.
 Judgment reversed and cause remanded.
 BRYANT, J., concurs. TYACK, J., dissents.